Filed 8/21/14  In re Anthony L. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ANTHONY L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>ANTHONY L.,<br><br>        Defendant and Appellant. | F068152<br><br>(Fresno Super. Ct. No. 12CEJ600481-2)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  James A. Kelley, Judge.

Karriem Baker, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P.J., Franson, J. and Peña, J.

## INTRODUCTION

A juvenile petition was filed pursuant to Welfare and Institutions Code section 602, in the Superior Court of Fresno County alleging appellant Anthony L., a minor, committed count I, second degree burglary (Pen. Code, §§ 459, 460, subd. (b))[1] and count II, receiving stolen property (§ 496, subd. (a)).  Appellant denied the allegations and requested a contested hearing.  The court found the allegations true, adjudged appellant a ward of the court, and placed him on supervised probation subject to certain terms and conditions.  The court also ordered appellant to complete 100 hours of community service, a three-page essay about character, and property-offender counseling. He was ordered to pay a $200 restitution fine, with $100 stayed pursuant to section 654.

On appeal, his appellate counsel has filed a brief which summarizes the facts, with citation to the record, raises no issues, and asks this court to independently review the record.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  We affirm.

## FACTS

On the morning of June 3, 2013, Mark Miranda (Miranda) was painting the inside of an apartment.  Sometime between 8:30 a.m. and 9:00 a.m., he heard someone knock on the apartment door.  Miranda opened the door and encountered a young man, about 16 to 17 years old with a piercing on his lower lip.  Miranda later identified appellant as this person.  Appellant said he was looking for someone but realized that person no longer lived in the apartment.  Appellant jokingly asked if he could come in.  Miranda said he was busy and appellant left.

Miranda closed the apartment's front door, but he forgot to lock it.  He left his Samsung Android cell phone on the kitchen counter he used with a Bluetooth ear piece. He resumed painting the back room of the apartment.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

Around 2:40 p.m., Miranda was listening on his Bluetooth ear device to a radio program that was streaming through his cell phone. Suddenly, the streaming program stopped. Miranda heard an indication through his earpiece that his cell phone's signal had been dropped, and it was out of range. He went into the kitchen to look at his cell phone and discovered it was gone. He also discovered the apartment's front door was slightly ajar.

Miranda disconnected the service on his cell phone the day after it disappeared. However, the "Drop Box" server continued to automatically upload to his account any photographs taken on the cell phone.

On June 5, 2013, Miranda logged on to his Drop Box account on his home computer. He found 200 photographs had been taken on his Samsung cell phone since it was missing, beginning on June 3 and continuing through that day. Appellant was depicted in some of the pictures, and Miranda realized he was the same person who had knocked and entered the apartment on the morning his cell phone disappeared. One photograph showed appellant holding Miranda's stolen Samsung cell phone. Miranda also found a screenshot of a Facebook page, and determined the person's identity.

Miranda used an online program called Google Latitude to find the cell phone's coordinates and location. He reported all this information to the police department.

On or about June 21, 2013, Detective Christopher Franks used the information provided by Miranda and went to the residence where appellant lived with his parents. Franks asked appellant if he had a cell phone. Appellant showed Franks that he had a cell phone. It was not Miranda's Samsung cell phone. Detective Franks showed appellant the photograph from Miranda's Drop Box account, which showed appellant with the stolen cell phone. Appellant admitted he had that particular cell phone. Appellant claimed someone named "Mike" gave it to him, he took the picture, and he gave it back to Mike. Appellant did not know "Mike's" last name or address and thought he was homeless.

3.

Detective Franks arrested appellant and advised him of the *Miranda*[2] warnings. Appellant changed his story and said his father bought the Samsung cell phone a month ago at a swap meet for $300 and gave it to appellant as a reward for doing well in school. Appellant said his father asked the seller if it was stolen, and the seller said no.

Appellant gave the Samsung cell phone to Detective Franks. Miranda later positively identified the cell phone as the one taken from the apartment.

### DEFENSE

At the jurisdictional hearing, appellant testified that on June 3, 2013, he was at school until classes were dismissed at 2:20 p.m. His mother picked him up from school, and he was with her for the rest of the day.

Later that day, he received a text message from his friend J.R. At 10:00 p.m., appellant met Jonathan R. (Jonathan) at a convenience store gas station. Appellant's father drove him to the gas station, and Jonathan got into the back of the car. Appellant bought the Samsung cell phone from him for $115. As part of the purchase price, appellant agreed to either give Jonathan more money or one of his pitbull puppies. Appellant testified his father was in the car and heard them talk about the transaction. Appellant did not know the cell phone was stolen. Appellant described Jonathan as Hispanic, about five feet eight inches tall, and heavier than him, weighing between 160 and 180 pounds.

Appellant admitted he lied when he initially told Detective Franks that "Mike" gave him the cell phone. Appellant admitted he lied again after he was arrested, when he claimed his father bought the cell phone at a swap meet for $300. Appellant testified he lied because he was scared, nervous, he had been asleep and just woke up, and it felt like a dream.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*)

4.

Appellant testified he subsequently had an exchange with Jonathan on Facebook and tried to get evidence that Jonathan sold him the cell phone.[3]

Robert L. (Robert), appellant's father, testified that he drove appellant to meet with someone at the gas station. The person got into his car, and they bought the Samsung cell phone from him for $115. Robert admitted he was present when appellant lied to Detective Franks about borrowing the stolen cell phone from Mike, and claiming his father bought the cell phone at a swap meet. Robert testified he told his son not to lie.

In rebuttal, Detective Franks testified that Robert was present when Franks interviewed appellant at his house about the stolen cell phone. Robert told Franks he bought the Samsung cell phone at a swap meeting for $300 and gave it to appellant. Robert did not say anything about buying the cell phone at a gas station from someone named Jonathan.

---

[3] At the beginning of the jurisdictional hearing, defense counsel stated that she had subpoenaed Jonathan, but he had failed to appear in court. Defense counsel intended to introduce evidence of Jonathan's hearsay statements as declarations against interest and asked the court to find Jonathan was unavailable since he failed to appear. The court said more evidence was required to find Jonathan was unavailable. The court offered to issue a body attachment for Jonathan and delay the proceedings, and defense counsel agreed. The court asked for a proof of service of the subpoena. Defense counsel replied that she spoke with Jonathan's mother, who confirmed they received the subpoena. The court said it could not issue a body attachment without a proof of service. Defense counsel declined the offer for a body attachment and said that they would go forward with the hearing.

During the hearing, defense counsel attempted to ask appellant about Jonathan's hearsay statements when he contacted him on Facebook. Counsel argued the evidence was admissible as declarations against Jonathan's penal interest. The prosecution objected and the court sustained the objection. Defense counsel did not make an offer of proof as to appellant's proposed testimony about Jonathan's alleged hearsay statements, or ask the court to further pursue the matter of whether Jonathan was unavailable.

## DISCUSSION

As noted above, appellant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that appellant was advised he could file his own brief with this court. By letter on March 18, 2014, we invited defendant to submit additional briefing. To date, he has not done so.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.